28367, 28368. NIX *v.* CITY OF ATLANTA; and *vice versa.*

DECIDED DECEMBER 4, 1940.

*John H. Hudson, O. C. Hancock,* for plaintiff.

*J. C. Savage, J. C. Murphy, E. L. Sterne, Frank A. Hooper Jr.,* for defendant.

STEPHENS, P. J. (After stating the foregoing facts.) It appears from the ordinance of the City of Atlanta, introduced in evidence, as follows: "The chief of police shall have the power to suspend any member of the force any number of days in his discretion for violation of any rule for the government of the police department, until the charge against him is disposed of by the police committee at any regular or called meeting. If the violation is of such a nature as demands an investigation by the committee, he will at once furnish the secretary with the name of the officer suspended, a copy of the charges, and the names of the witnesses to be subpœnaed, that the charges may be fully investigated by the police committee; all such to be reported to the committee at the first called or regular meeting thereafter for their approval." This ordinance, adopted pursuant to the charter of the City of Atlanta, and appears in the approved Code of the City of Atlanta for the year 1924, as sec. 2254. The chief of police of the defendant city therefore had power to suspend the plaintiff, a member of the police force of the city, for any number of days, in his discretion, for a violation of any rule or regulation adopted for the government of the police department. While it does not appear from the record what were the rules for the government of the police department, for a violation of which a member of the police force could be suspended under the above ordinance, in his order suspending the plaintiff it was recited by the chief of police that such suspension was because the plaintiff had, in violation of the criminal law, accepted money from a named person as a reward to influence his conduct in the discharge of his duties by refraining from arresting unknown persons for a violation of the lottery laws of this State, and that he charged the plaintiff with a violation of the rules of the department, which violations constituted a neglect of duty, immoral conduct, conduct unbecoming an officer, and conduct injurious to the peace and public welfare and violation of the penal laws of the State.

No contention is made by the plaintiff that his suspension by the chief of police was not legally authorized. The plaintiff's complaint is that he was not given an immediate trial as required by law on the charges before the police committee of council, and

had not been given a trial after demand made therefor by him. It appears from the evidence that while the charges were made by the chief of police on March 26, 1937, when the plaintiff was suspended, the charges were not filed with the police committee until some time in June, 1937. Whether or not the chief of police was justified in holding up the filing of the charges with the committee until this date, and should have filed them earlier than he did, and with the committee which met immediately following the preferring of the charges and before June, 1937, it appears from the plaintiff's evidence that either the chief of police or the chairman of the committee stated that no action would be taken on the charges until the disposition of the case against the plaintiff in the criminal court of Fulton County in which the plaintiff had been indicted on March 12, 1937, on the same charges which had been preferred against him by the chief of police. While there is some evidence that the plaintiff, after the charges were made, demanded of the secretary of the chief of police, who at the time of trial was dead, that the plaintiff be put back to work, and that the secretary stated that the plaintiff would not be put back to work until the charges were disposed of, Chief Hornsby testified that no demand for a trial was ever made to him by the plaintiff or his attorney, and that the first time a demand was ever made on him for salary was on the date of the written demand therefor in October, 1938. He also testified that the plaintiff never made a demand upon him to return to work, or to be assigned to regular duty. Mr. G. D. Bridges, chairman of the police committee, testified that neither the plaintiff nor his counsel had ever demanded of him any trial before the committee during 1937. The plaintiff himself testified that at no time after his suspension did he appear before the police committee of counsel and ask for a trial, and that the only thing he did was to file a paper with the secretary of the chief of police asking for a trial.

The evidence authorizes the inference that the plaintiff had not made any demand on the chief of police to file such charges, and made no demand for trial. It appears that on March 12, 1937, before the charges had been preferred against the plaintiff, the grand jury indicted him on the same charge of bribery on which the chief of police had suspended him. It also appears that the indictment was pending without trial until the second term after the term at which the indictment was obtained and the plaintiff

made a demand and he did not become exonerated until the expiration of two terms, which would have been immediately prior to the time when the chief of police filed the charges with the police committee on June 17, 1937. While it might have been the duty of the chief of police, upon suspending the plaintiff and preferring charges against him, to immediately file the charges with the committee so as to secure an early hearing before the committee of such charges, such failure did not render the suspension of the plaintiff any the less legal, pending a hearing before the committee of council.

On June 18, 1937, the plaintiff tendered his resignation and it was accepted. Therefore, the entire period of suspension, particularly when the plaintiff had made no demand for a trial before the committee, as the jury was authorized to find, was legally authorized.

Was the plaintiff entitled to his salary during the period of his legal suspension from duty when in fact he performed no services for the defendant as a police officer of the city? There is presented no law or ordinance authorizing the payment of the salary of a policeman during his suspension under charges of a violation of any rule of the police committee for the government of the police department. There is an ordinance of the city providing that during the absence of a police officer the substitute performing his duties shall receive pay. In the absence of any law or ordinance providing for payment of a suspended policeman's salary, where he is suspended for a violation of the rules of the committee for the government of the police department, such suspended policeman is not entitled to pay during his suspension and while he is not performing the duties of a police officer.

The verdict was authorized, and the court did not err in overruling the motion for new trial.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. Sutton, J., concurs. Felton, J., concurs specially.*